```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KEVIN L. JEFFERSON,

                Plaintiff,                    ORDER
                                              08-CV-204(JS)(ARL)
    - against -

JANE DOE, et al.,

                Defendants.
----------------------------------X
```

APPEARANCES:

For Plaintiff:      Kevin L. Jefferson, Pro Se
                    Prisoner No. 139539
                    Suffolk County Jail
                    110 Center Drive
                    Riverhead, NY 11901

For Defendants:     Brian C. Mitchell, Esq.
                    Suffolk County Department of Law
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788

SEYBERT, District Judge:

Plaintiff Kevin Jefferson, a pro se prisoner[1], has moved for a preliminary injunction precluding Defendants from denying him prisoner grievance forms, and retaliating against him for invoking his First Amendment right to petition. Mr. Jefferson also seeks leave to amend his Amended Complaint to include the allegations contained in his preliminary injunction motion. For the following reasons, Mr. Jefferson's preliminary injunction motion is GRANTED

---

[1] Although appearing without counsel, Mr. Jefferson is not a typical pro se prisoner litigant. His papers reflect a considerable knowledge of the law, and considerable skill in presenting relevant factual contentions cogently and coherently.

IN PART AND DENIED IN PART.  Mr. Jefferson's motion to amend is GRANTED.

BACKGROUND

Mr. Jefferson is a 45-year old man who is currently incarcerated in the Suffolk County Jail.  He has spent much of his adult life in and out of prison.  By his own recollection, he has been sent to the Suffolk County Jail "at least 12" times over the past twenty years.  (Tr. 33.)

In January 2008, Mr. Jefferson commenced this action, alleging that officials at the Suffolk County Jail had denied him grievance forms, and retaliated against him for requesting grievances.  On February 12, 2008, the Court granted Mr. Jefferson's motion for a temporary restraining order that precluded Defendants from committing these alleged wrongs.  However, the Court subsequently denied Mr. Jefferson's preliminary injunction motion because, by the time the Court considered this motion, Mr. Jefferson had been released.

Around August 20, 2010, Mr. Jefferson returned to the Suffolk County Jail.  On September 9, 2010, Mr. Jefferson got involved in an incident that led to his renewed preliminary injunction motion.  Mr. Jefferson testified that, on the morning of September 9, he expressed a desire to use the law library.  (Tr. 8.) In response, another inmate told him that their house had been called

the day before, while they were "at yard" on a recreation period. (Id.) Mr. Jefferson approached a guard and complained about the house being called for law library when the prisoners were not around to hear that call. (Id. 8-9.) In response, the guard (apparently Sgt. Donald Sherrill) told him that there was nothing he could do, because the house was on lockdown that day. (Id. 9.) Sgt. Sherrill disputes this account, contending that that the house was not on lockdown and that he was actually preparing inmates to go to recreation when the incident occurred. (Id. 94.)

Mr. Jefferson then got into a dispute with Sgt. Sherrill, although the parties disagree about exactly what transpired. According to Mr. Jefferson, after being told that he could not go to the law library, he requested a grievance form. (Id. 10.) Mr. Jefferson claims that, in response, Sgt. Sherrill told another officer "give him a grievance form and write his ass up for inciting." (Id. 10-11.) Mr. Jefferson contends that he then told Sgt. Sherrill "I would reconsider that if I were you . . . I have [a] civil rights lawsuit pending against the jail and an injunction in place against retaliation." (Id. 11.) According to Mr. Jefferson, Sgt. Sherrill then said "since you've got a big mouth, now you're not getting a grievance form and you can roll your shit up," meaning that he was transferring Mr. Jefferson to another area of the prison. (Id. 11.) Mr. Jefferson claims that he then took his belongings and brought

3

them to the guards for inspection. But, instead of inspecting his stuff, the guards proceeded to step on his property, including his food, while insulting him. (Id. 11-12.) Mr. Jefferson contends that an officer (again, apparently Sgt. Sherrill) then telephoned another area of the prison to tell them that he was "sending [] an asshole. Lock him in for awhile . . . . And if you want to send him a message, that would be fine with me." (Id. 12.) Mr. Jefferson then claims that, while transferring him, various officers implicitly threatened him, with one unidentified officer asking, in a scary tone, "what is all this grievance shit about?" (Id. 14.) After his transfer, Mr. Jefferson claims that he again requested a grievance form, and was again refused, this time on the grounds that he had failed to raise a grievable issue. (Id. 14-15.)

Defendants, through the testimony of Sgt. Sherrill and Officer Wayne Whelahan, describe these events somewhat differently. According to Sgt. Sherril and Officer Whelahan, Mr. Jefferson began "shouting he needed to get back to law books," as they were trying to assemble his cell block for recreation. (Id. 60, see also 76-77.) Mr. Jefferson was told that, although he couldn't go to the law library that instant, he would have the opportunity later on if he filed a request slip. (Id. 61.) Mr. Jefferson continued to act belligerently, so Officer Whelahan asked him to sit on his bunk. (Id. 62.) Mr. Jefferson refused, shouting that he "need[ed] to get

4

down to the mother fucking law books," that "you mother fuckers better get me down there or I'll see you in District Court," and that "I'm going to have your jobs." (Id. 62, 78-79.) Officer Whelahan and Sgt. Sherrill again told Mr. Jefferson to sit on his bunk, and again Mr. Jefferson refused. (Id. 62-63, 79.) According to Officer Whelahan and Sgt. Sherrill, Mr. Jefferson's behavior and demeanor caused a disturbance and interfered with their ability to assemble the inmates for recreation. (Id. 63.) Mr. Jefferson then requested a "fucking grievance." (Id. 79, see also 64.) Sgt. Sherrill instructed Officer Whelahan to give Mr. Jefferson a grievance form, and Officer Whelahan complied. (Id. 64, 79.) Once Mr. Jefferson received the grievance form, he sat on his bunk and calmed down. (Id. 65, 79.) Officer Sherrill then told Mr. Jefferson he was being transferred and should "roll up" his belongings, and wrote him up on disciplinary charges. (Id. 80.) Sgt. Sherrill participated in inspecting Mr. Jefferson's property before transfer, and denies ever stepping on his belongings. (Id. 81.) Mr. Jefferson was then transferred.

After these events, Sgt. Sherrill and Officer Whelahan drafted an Incident Report Form and brought Mr. Jefferson up on disciplinary charges. The Incident Report Form recounts the day's events consistent with Sgt. Sherrill's and Officer Whelahan's testimony. The charges consisted of six counts alleging violations

5

of prison rules.  Ultimately, Mr. Jefferson was convicted on four of these counts, but received a suspended sentence with respect to two of them.  The two remaining counts each led to a 20-day term of disciplinary confinement, to be served consecutively (i.e., a total of 40 days disciplinary confinement).

For purposes of Mr. Jefferson's current claims, only one of these remaining counts is relevant: his discipline for a violation of prison rule 15.01.  That rule proscribes discipline for "Threats. Verbal, written or gestured towards staff members or other inmates." (Tr. 96.)  On cross-examination, Officer Sherrill acknowledged that he based this charge on Mr. Jefferson's threat to sue him and Officer Whelahan.  (Id. 96.)  According to Officer Sherrill, Mr. Jefferson's threat to sue violated rule 15.01 because it was an attempt "to manipulate the system, you give me what you want or you have to face lawsuits." (Id. 101.)  Officer Sherrill conceded that actually filing a lawsuit would not violate rule 15.01, but articulated that "threatening staff with lawsuits to get what you want is different from filing a lawsuit in court." (Id. 102.) Officer Sherrill further commented that, in his opinion, a "threat[]" to sue another inmate could also violate rule 15.01 "depend[ing] on the circumstances," such as whether it was "within the officer's earshot." (Id. 104.)

6

DISCUSSION

I. Standard of Review for a Preliminary Injunction

In order to justify a preliminary injunction, a party must demonstrate: 1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the party's favor, and 3) that the public's interest weighs in favor of granting an injunction. Metropolitan Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010).[2] When, however, a party seeks a mandatory injunction that alters the status quo by commanding a positive act, the party must meet a higher standard. D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006). Specifically,

---

[2] Recent Supreme Court opinions call into question the Second Circuit's willingness to permit a preliminary injunction based on serious questions going to the merits. Over the last few years, the Supreme Court has consistently required that parties seeking a preliminary injunction demonstrate something akin to a "likelihood of success on the merits," not merely sufficiently serious questions going to the merits. See Nken v. Holder, 129 S. Ct. 1749, 1761 (2009) (requiring a "strong showing that he is likely to succeed on the merits"); Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits."). Rather oddly, however, the Second Circuit has expressly decided not to follow the Supreme Court's guidance. See Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 38 (2d Cir. 2010) (concluding that the Supreme Court's recent opinions did not intend to "abrogate the more flexible standard for a preliminary injunction"). As this Court sits in the Second Circuit, it must apply the Second Circuit's interpretation of Supreme Court precedent, no matter how strained that interpretation appears.

"[t]he moving party must make a clear or substantial showing of a likelihood of success" on the merits. Id. (internal citations and quotations omitted). This standard is "especially appropriate when a preliminary injunction is sought against government." Id.

Here, read fairly, Mr. Jefferson largely seeks to alter the status quo by demanding that Defendants do certain things. However, as discussed below, the Court need not decide what preliminary injunction standard applies to what portions of Mr. Jefferson's relief. This is because Mr. Jefferson's unsuccessful claims fail under the lenient standard, while his successful claim succeeds under the more stringent one.

## II. Likelihood of Success on the Merits

### A. Failure to Provide Grievance Forms

Considering the evidence submitted, the Court finds that Mr. Jefferson has not shown a likelihood of success on the merits, or sufficiently serious questions going to the merits, with respect to his claim that prison officials systematically deny him grievance forms. With respect to the September 14th incident, both Sgt. Sherrill and Officer Whelahan testified that they provided Mr. Jefferson with a grievance form. (Tr. 64, 79.) The Court credits this testimony. More generally, Mr. Jefferson conceded that grievance forms are available around the jail, including in the law library. (Id. 39-40.) And, in response to Mr. Jefferson's recent

complaints, Defendants provided him with two grievance forms on October 4, and another ten on October 12. (Id. 42-46.) In addition, the record reflects that Mr. Jefferson goes to the law library frequently, where he has the opportunity to pick up more grievance forms. (Id. 40, 42, 45-46.) Given this evidence, the Court finds, for this motion's purposes, that Mr. Jefferson has not met his burden in showing that jail officials deny him grievance forms.

 B. <u>Retaliation</u>

Mr. Jefferson's retaliation claims fair somewhat better. The Court credits Sgt. Sherrill's and Officer Whelahan's testimony that Mr. Jefferson caused a disturbance on September 14th by, among other things, shouting, using profanity, and refusing a correctional officer's order. The Court further credits Officer Sherrill's testimony that he did not step on Mr. Jefferson's food, or instruct any other officer to "send [Mr. Jefferson] a message." (Tr. 81, 89.) So, for the most part, the Court finds that Mr. Jefferson has not met his preliminary injunction burden on his retaliation claims.

There is one exception, however. On cross-examination, Officer Sherrill freely admitted that he charged Mr. Jefferson under prison rule 15.01, which prohibits "[t]hreats," because Mr. Jefferson threatened him with a lawsuit. And Mr. Jefferson was then convicted of this disciplinary infraction and sentenced to twenty days of disciplinary detention. This series of events violated Mr.

9

Jefferson's First Amendment right to petition.

"It is well-settled that [p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." Colon v. Coughlin, 58 F.3d 865, 871-72 (2d Cir. 1995). To sustain a First Amendment retaliation claim, a prisoner must demonstrate: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). "[A]dverse action" means "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Id. at 381 (citations and quotations omitted). The retaliatory conduct does not, however, have to subjectively chill the prisoner from exercising his rights. Id. at 384. If the prisoner suffers an actionable harm, but still "respond[s] to [the] retaliation with greater than 'ordinary firmness'" by continuing to exercise his rights, he has a First Amendment retaliation cause of action. Id.

Here, Mr. Jefferson meets every prong of the Gill test. First, it is well-settled that the First Amendment protects not only

the right to sue, but the right to threaten suit.[3] And prisoners enjoy this First Amendment right just as much as other citizens.[4] Thus, Mr. Jefferson's "speech or conduct at issue was protected." Gill, 389 F.3d at 380.

Second, it cannot be seriously disputed that bringing a prisoner up on charges and sentencing him to twenty days of special disciplinary detention qualifies as "adverse action." See id. at 383 ("adverse action" could include "placing a plaintiff in keeplock for a period of weeks").

And third, Sgt. Sherrill freely admitted that he based the 15.01 charge on Mr. Jefferson's threat to sue. So the "causal connection" between Mr. Jefferson's protected conduct and the adverse action is uncontested. Id. at 380.

---

[3] See Kerman v. City of New York, 261 F.3d 229, 241-43 (2d Cir. 2001) (plaintiff had valid retaliation claim against police officers who allegedly took adverse action in response to plaintiff's "threats to sue them"); Glenview Const., Inc. v. Bucci, 165 F. Supp. 2d 545, 554 (S.D.N.Y. 2001) (plaintiff demonstrated triable issues of fact with respect to First Amendment retaliation claim when municipality engaged in "simple vindictiveness" in response to plaintiff threatening a lawsuit); see also Primetime 24 Joint Venture v. National Broadcasting, Co., Inc., 219 F.3d 92, 100 (2d Cir. 2000) ("Courts have extended [the] Noerr-Pennington [right to petition doctrine] to encompass concerted efforts incident to litigation, such as prelitigation 'threat letters'") (citations omitted).

[4] See Sprau v. Coughlin, 997 F. Supp. 390, 393 (W.D.N.Y. 1998) (holding that prisoner's "threat[] to file a complaint was protected by the First Amendment's guarantee of the right to petition the government for redress of grievance," permitting prisoner's First Amendment retaliation claim to survive summary judgment, and collecting similar cases).

11

It follows then that, as to Mr. Jefferson's rule 15.01 claim, he has not only made a clear or substantial showing of a likelihood of success on the merits, he has actually proved his substantive case.

III. Irreparable Harm

To obtain a preliminary injunction, Mr. Jefferson must show "that he is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 129 S. Ct. at 374. Thus, in at least some cases, the irreparable harm prong is "closely related, if not intertwined" with the party's ability to show a likelihood of success on the merits, or sufficiently serious questions going to the merits. See Kekis v. Blue Cross and Blue Shield of Utica-Watertown, Inc., 815 F. Supp. 571, 584 (N.D.N.Y. 1993). This is one of those cases. With respect to most of Mr. Jefferson's claims, he has failed to raise even sufficiently serious questions concerning whether Defendants have denied him grievance forms or retaliated against him. See, supra at 8-9. Thus, it is not "likely" that he will be irreparably harmed by denying preliminary relief.

On the other hand, the Court has found that Defendants violated Mr. Jefferson's First Amendment right to petition by charging and disciplining him under rule 15.01 for threatening to sue. And there is a "presumption of irreparable injury that flows from a violation of constitutional rights." Jolly v. Coughlin, 76

F.3d 468, 482 (2d Cir. 1996); Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Defendants have submitted nothing to rebut that presumption. Accordingly, the Court finds that Mr. Jefferson has shown irreparable harm with respect to his treatment under prison disciplinary rule 15.01.

IV. Balance of the Hardships & the Public Interest

Finally, the Court concludes that the balance of the hardships tip in Mr. Jefferson's favor with respect to a limited injunction concerning prison disciplinary rule 15.01. If Defendants continue to interpret and enforce rule 15.01 as prohibiting prisoners from threatening lawsuits, they will continue to burden prisoners' First Amendment petitioning rights. On the flip side, Defendants have no legitimate interest in disciplining prisoners who threaten lawsuits. In this regard, the Court acknowledges that Sgt. Sherrill voiced a legitimate concern that some prisoners may seek to manipulate the system by threatening frivolous lawsuits. But Sgt. Sherrill's proper remedy against attempted manipulation is to ignore such "threats," not seek discipline against the prisoners who make them. Finally, the public interest comes down strongly in favor of protecting the First Amendment.

V.   Motion for Reconsideration

The Court initially decided Mr. Jefferson's motion by short Electronic Order, so that it could afford Mr. Jefferson swift relief while it spent time crafting this opinion. In pertinent part, the Court's Electronic Order set forth:

> Mr. Jefferson has a First Amendment right to threaten legal action. Though his cross-examination of Sgt. Sherrill, Mr. Jefferson established that Sgt. Sherrill improperly predicated a disciplinary charge brought under prison rule 15.01 on Mr. Jefferon's threats to sue. Accordingly, Mr. Jefferson's motion is granted to the following extent: (1) Defendants are ENJOINED from interpreting prison disciplinary rule 15.01 as precluding prisoners from threatening lawsuits; (2) Defendants are ORDERED to strike Mr. Jefferson's conviction under rule 15.01 that arose out of the September 9, 2010 incident.

In response to the Court's Electronic Order, Defendants promptly moved for reconsideration. This motion argued that the Court's relief was inappropriate because, in Defendants' opinion: (1) Mr. Jefferson's request for injunctive relief did not complain about "any constitutional infirmities with the disciplinary process at the Jail"; and (2) the underlying Amended Complaint also makes no such claims. According to Defendants, Mr. Jefferson first alerted them to his constitutional argument during the preliminary injunction hearing. Defendants argue that this was inappropriate and that, if Mr. Jefferson wanted relief based on his constitutional

14

argument, he should have "file[d] a separate cause of action," or sought "administrative remedies within the corrections system," rather than raised these claims in this action.

Defendants are mistaken. As an initial matter, the Court notes that, although Mr. Jefferson has competently represented himself, he remains a pro se litigant. So the Court must construe his pleadings liberally, "to raise the strongest arguments that they suggest." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). In this case, the Court does not need to rely apply that principle too heavily. In seeking a preliminary injunction, Mr. Jefferson alleged that "the Third Floor Sergeant served on plaintiff a Notice of Charges (2 pgs) reflecting six disciplinary charges, falsely accusing plaintiff of serious misconduct solely in retaliation for plaintiff's exercise of constitutional rights – seeking to petition for redress of grievances. Among said charges, one even states '(threats) in that you threatened the c/o and SGT with lawsuits.'" Pr. Inj. Mo. at 7. Defendants read this pleading as alleging only "fals[e] charge[s]," not unconstitutional ones. See Docket No. 95 at 2. But the Court doesn't see it that way, without even needing to construe Mr. Jefferson's papers liberally. Mr. Jefferson never claims that the charge about threatening lawsuits was "false." On the contrary, his request for preliminary injunctive relief specifically concedes that he threatened legal action against Sgt.

15

Sherrill.[5] So, taken in context, it's pretty clear that Mr. Jefferson intended to set forth a First Amendment retaliation claim based on him "<u>seeking to petition for redress of grievances</u>," by, among other things, threatening legal action. And that's precisely the claim that Mr. Jefferson supported through testimony, and that the Court awarded relief on.

Defendants' argument concerning Mr. Jefferson's Amended Complaint is slightly stronger. Mr. Jefferson's Amended Complaint alleges a First Amendment retaliation claim based on various reprisals he allegedly suffered in response to his grievances and requests for grievances. But it does not specifically make any constitutional claims concerning how Defendants interpret rule 15.01. This failure is, however, perfectly understandable. When Mr. Jefferson filed his Amended Complaint, he had not yet been charged under 15.01, and had not yet suffered the specific constitutional harms that he alleged in his preliminary injunction motion. Mr. Jefferson is hardly clairvoyant. And, in any event, his preliminary injunction motion seeks to cure that deficiency by formally moving to amend his complaint to include his new allegations. Pr. Inj. Mo. at 11-12.[6] The Court does not see what more Mr. Jefferson could have

---

[5] See Pr. Inj. Mo. at 4 (alleging that he informed Sgt. Sherrill "be advised, I will seek legal action against you and the officer under Rule 65 of the Federal Rules of Civil Procedure").

[6] Even without Mr. Jefferson's formal request to amend his Amended Complaint, the Court had the discretionary authority to consider his

realistically done, particularly given his pro se status. He provided Defendants with notice of his constitutional claims. Through his preliminary injunction motion, he set forth detailed factual allegations concerning them. Then, at the hearing, he proved some of his allegations by eliciting damaging concessions from Sgt. Sherrill. Under these circumstances, it would be completely unjust to allow Defendants to continue to violate inmates' First Amendment right to petition by unconstitutionally enforcing rule 15.01, particularly as against Mr. Jefferson, simply because – in Defendants' view – Mr. Jefferson did not sufficiently dot all the procedural "I"s, and cross all the procedural "T"s.

## CONCLUSION

Mr. Jefferson has met his preliminary injunction burden only with respect to the limited issue of how some prison officials interpret and enforce disciplinary rule 15.01. Thus, he is entitled to an injunction directed only against impermissible use of this rule. It follows then that Defendants: (1) are preliminary ENJOINED from interpreting or enforcing rule 15.01 as precluding prisoners

---

pro se papers together to see if he set forth an actionable claim for relief. See generally Greene v. Connecticut, 04-CV-658, 2004 WL 2713226, at *1 (D. Conn. 2004) (construing amended complaint together with preliminary injunction motion to determine whether pro se plaintiff had set forth any meritorious claims); see also City of Rome, N.Y. v. Verizon Communications, Inc., 362 F.3d 168, 181 (2d Cir. 2004) (recognizing that courts have the discretionary power to constructively amend a complaint to include new claims that arise during the course of litigation).

from threatening lawsuits; and (2) ORDERED to strike Mr. Jefferson's conviction for violating rule 15.01 that arose out of the September 9, 2010 incident.[7]  The Court grants Mr. Jefferson leave to file a Second Amended Complaint for the limited purpose of including the new allegations he raised in his September 14th preliminary injunction motion and/or evidenced at the preliminary injunction hearing.

                                            SO ORDERED.

                                      _____/s/_____
                                      Joanna Seybert,  U.S.D.J.

Dated:     Central Islip, New York
            October 27, 2010

---

[7] This relief is not final.  If Defendants somehow overcome Sgt. Sherrill's own concessions and succeed on the merits of the rule 15.01 claim, the Court will permit them to reinstate Mr. Jefferson's conviction, and return him to disciplinary detention to serve the remainder of his disciplinary sentence.